# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL COMPLAINT |
| | : | |
| v. | : | HON. TONIANNE J. BONGIOVANNI |
| | : | |
| CHRISTOPHER RYAN | : | Mag. No. 20-5007 |

I, Bradley H. Zartman, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

_____
Bradley H. Zartman, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,
March  16 , 2020 at Trenton, New Jersey

HONORABLE TONIANNE J. BONGIOVANNI           _____
UNITED STATES MAGISTRATE JUDGE                Signature of Judicial Officer

1

## ATTACHMENT A

### Count One

On or about May 20, 2019, in Mercer County, in the District of New Jersey, and elsewhere, the defendant,

**CHRISTOPHER RYAN,**

did knowingly and intentionally distribute, and possess with the intent to distribute, 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

## ATTACHMENT B

I, Bradley H. Zartman, am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have knowledge of the following facts based on my own investigation and discussions with other law enforcement personnel and other individuals involved in this matter. Because this affidavit is submitted for the sole purpose of establishing probable cause to support the issuance of a criminal complaint, I have not included each and every fact known by the government concerning this investigation.

1. In or around March 2019, a source deemed by the FBI to be credible and reliable (the "Government Source"), provided information to the FBI that on several prior occasions dating back to in or around 2017, the Government Source had purchased methamphetamine from Christopher Ryan ("RYAN"). According to the Government Source, during this period of methamphetamine transactions, RYAN lived in California, while the Government Source lived in New Jersey. The Government Source explained to law enforcement that during most of these several interstate narcotics transactions, RYAN and the Government Source would communicate by cellular phone, establishing, ordinarily through coded language, the volume and price of the methamphetamine to be sold. Once the parties had negotiated the volume and price of the transaction, the Government Source would send by mail or courier service to RYAN in California half of the agreed-upon purchase price. Then, according to the Government Source, RYAN would deliver from California to New Jersey by mail or courier service the agreed-upon volume of methamphetamine. Finally, according to the Government Source, upon receipt of the methamphetamine, the Government Source would send RYAN in California by mail or courier service the remainder of the purchase price.

2. In or around April 2019, while speaking with law enforcement, the Government Source offered to contact RYAN in an effort to solicit a methamphetamine transaction. Accordingly, at the direction of law enforcement, on or about April 18, 2019, the Government Source sent RYAN a text message seeking a price for one pound of methamphetamine to be delivered from California to New Jersey. Using coded language designed to mask the nature of the text message exchange, the Government Source asked RYAN: "Gimme an idea on a number for the seat and Ill hit ya tomorrow." The Government Source informed law enforcement that the Government Source often would ask RYAN for a price for methamphetamine by referencing seat locations in a fictitious arena. Further according to the Government Source, RYAN would typically respond to such an inquiry by providing the price for the methamphetamine disguised as a seat location in this fictitious arena. Accordingly, in response to the Government Source's price inquiry, RYAN responded by text message: "Best seats are in the 6100_6200 section," indicating to the Government Source that the one pound of methamphetamine would cost between $6,100 and $6,200.

3. At the direction of law enforcement, on or about May 6, 2019, the Government Source sent by United States Postal Service, Priority Mail, $3,000 in government furnished U.S. currency to the residential address of a friend of RYAN's in Huntington Beach, California. RYAN had earlier instructed the Government Source to deliver the cash to this address.

4. During a telephone call with RYAN on or about May 7, 2019, the Government Source asked whether RYAN had received an earlier text message from the Government Source confirming the delivery of the cash. RYAN responded that he had received the text message. The Government Source further informed RYAN on the call that the cash would arrive in California on May 8, 2019.

5. On or about May 8, 2019, the package containing the $3,000 in government issued currency was delivered to the residential address in Huntington Beach, California, as directed by RYAN.

6. At the direction of RYAN, on or about May 20, 2019, an individual whose identity was later confirmed by law enforcement, mailed approximately one pound of methamphetamine from Long Beach, California to a law enforcement controlled post office box in Trenton. The package arrived at the post office box on or about May 23, 2019; shortly thereafter, law enforcement seized the package. Law enforcement opened the package and, after examining and weighing its contents, determined the contents of the package included approximately one pound of suspected methamphetamine.

7. Law enforcement thereafter submitted the suspected methamphetamine to the U.S. Department of Justice, Drug Enforcement Administration, Northeast Laboratory, which tested the controlled substance and confirmed that the substance was approximately 435 grams of methamphetamine, just under one pound.

8. On or about November 20, 2019, law enforcement approached RYAN at his residence in Sunset Beach, California. RYAN agreed to be interviewed by law enforcement. During the interview, RYAN admitted in substance and in part that he had agreed in or around April and May 2019 to sell the Government Source one pound of methamphetamine for approximately $6,000. RYAN further admitted that he directed the Government Source to send $3,000 to the residence of a friend of RYAN's, who later accepted the delivery before bringing the package to RYAN. RYAN told law enforcement that after receiving the partial payment for the methamphetamine, RYAN used the money to purchase one pound of methamphetamine from a local narcotics supplier before enlisting another friend of his to ship the methamphetamine to a post office box in New Jersey, as directed by the Government Source. RYAN further admitted that he used friends of his to accept delivery of the cash and to ship the methamphetamine in an effort to insulate him from criminal

liability.  When asked, RYAN further admitted to law enforcement that over a sustained period in or around 2017 and 2018, RYAN regularly sold the Government Source methamphetamine, typically in quantities of one to two pounds per transaction.